**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Carpenter Braselton, LLC, Appellant,

v.

Ashley Roberts, Jeremy Cook, and Salaheddine Ezzaoudi, Respondents.

Appellate Case No. 2017-002546

_____

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

_____

Unpublished Opinion No. 2021-UP-280
Submitted June 1, 2020 – Filed July 21, 2021

_____

**AFFIRMED**

_____

Liam Donovan Duffy, of Yarborough Applegate, LLC, of Charleston, and John Edward Rosen, of J. Rosen Law, LLC, of Folly Beach, both for Appellant.

Demetri K. Koutrakos, of Callison Tighe & Robinson, LLC, of Columbia, for Respondents.

_____

**PER CURIAM:** Carpenter Braselton, LLC, (Appellant), the owner of a lot in a subdivision, appeals the trial court's order granting summary judgment to Ashley Roberts, Jeremy Cook, and Salaheddine Ezzaoudi (collectively, Respondents), who

own other lots in the subdivision. Appellant challenges the trial court's holding that a notation on the subdivision plat (the Plat) that certain lots were "for agricultural use only" (Agricultural Use Provision) did not create a valid restriction on the use of the lots. We affirm.

Appellant argues the trial court erred in allowing and relying upon extrinsic evidence to conclude that there was no intent to create a restriction on the use of the parties' lots, despite the plain language on the face of the Plat that the lots were to be utilized "for agricultural use only." It also asserts the trial court erred as a matter of law in concluding that the language on the Plat was not a valid restriction on the use of those properties. We disagree.

"Restrictive covenants are contractual in nature." *RV Resort & Yacht Club Owners Ass'n, Inc. v. BillyBob's Marina, Inc.*, 386 S.C. 313, 320, 688 S.E.2d 555, 559 (2010) (quoting *Hardy v. Aiken*, 369 S.C. 160, 166, 631 S.E.2d 539, 542 (2006)). "A *restriction on the use of property must be created in express terms or by plain and unmistakable implication*, and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of property." *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001) (quoting *Taylor v. Lindsey*, 332 S.C. 1, 5, 498 S.E.2d 862, 864 (1998)). "Words of a restrictive covenant will be given the common, ordinary meaning attributed to them at the time of their execution." *Taylor*, 332 S.C. at 4, 498 S.E.2d at 863. "[T]he paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document." *Id.* at 4, 498 S.E.2d at 863-64 (1998) (quoting *Palmetto Dunes Resort v. Brown*, 287 S.C. 1, 6, 336 S.E.2d 15, 18 (Ct. App. 1985)).

When a deed describes land as shown on a certain plat, the plat becomes a part of the deed. *Murrells Inlet Corp. v. Ward*, 378 S.C. 225, 232, 662 S.E.2d 452, 455 (Ct. App. 2008). A plat may also be ambiguous as to the creation of an easement. *Hamilton v. CCM, Inc.*, 274 S.C. 152, 157, 263 S.E.2d 378, 381 (1980) (reviewing a plat to determine whether it created an open space easement and finding the plat was "obviously ambiguous"). The court explained,

> [W]here the language of a restrictive covenant is equally capable of two or more constructions, that construction will be adopted which least restricts the property. The same reasoning would apply to a restriction, such as an alleged easement shown on a plat incorporated by a deed, since restrictions on the use of real estate are to be strictly

construed, with all doubts resolved in favor of the free
use of the property. This rule of strict construction is
subject to the provision that it is not applicable so as to
defeat the plain and obvious purpose of the instrument.

*Id.* at 157-58, 263 S.E.2d at 381. "[I]n the interpretation of maps and plats[,]
intention will not be inferred from symbols of uncertain meaning or from fanciful
adornments on the plat . . . ." *Id.* at 157, 263 S.E.2d at 380. "Circumstances
surrounding the origin of an alleged restriction may also be considered in
construing that restriction." *Id.* at 158, 263 S.E.2d at 381.

"It is a question of law for the court whether the language of a contract is
ambiguous. Once the court decides the language is ambiguous, evidence may be
admitted to show the intent of the parties. The determination of the parties' intent
is then a question of fact." *Harbin v. Williams*, 429 S.C. 1, 8, 837 S.E.2d 491, 495
(Ct. App. 2019) (quoting *Town of McClellanville*, 345 S.C. at 623, 550 S.E.2d at
302-03). "On the other hand, the construction of a clear and unambiguous deed is
a question of law for the court." *Id.* (quoting *Town of McClellanville*, 345 S.C. at
623, 550 S.E.2d at 303).

Here, while the language used in the Agricultural Use Provision is not ambiguous,
the origin of this language on the Plat may create an ambiguity. To indicate the
dedication of a road on the Plat, the surveyor who prepared the Plat, F. Elliotte
Quinn, III, placed the provision about the road in a box and the owners of the
property at that time, the heirs of James Roper (Heirs), signed under this provision.
In contrast, the Agricultural Use Provision is not in a box; it is in the area of the
Plat with the notations placed by the Charleston County Planning Commission.
The typeface of the Agricultural Use Provision does not match that used by Quinn
in the Plat. Instead, as the trial court noted, it is in the same or similar typeface as
the notations that the Charleston County Planning Commission definitely added to
the Plat.

Even if we cannot say the Plat unambiguously shows that the Charleston County
Planning Commission placed the Agricultural Use Provision on the plat, we find
the Plat is ambiguous as to the origin of the provision. Furthermore, an easement
created by a plat is an implied easement. *See Gooldy v. Storage Ctr.-Platt Springs,
LLC*, 422 S.C. 332, 338, 811 S.E.2d 779, 782 (2018) ("Generally, when a deed
references a plat that contains an easement, an implied easement arises even
though the deed itself is silent."). The presumption of an implied easement may be
"rebutted by a specific, contrary intention by the grantor." *Id.* Therefore, we find

the trial court did not err in considering extrinsic evidence to determine the Heirs' intent.

In his affidavit, Quinn stated the Charleston County Planning Commission placed the Agricultural Use Provision on the Plat "for the purpose of indicating that Charleston County would not, at that time, approve building permits for Lots C-2, C-3, C-4, and C-5 because those lots did not meet current minimum standards for a modified conventional sub-service disposal system." He explained Lot C-1 did meet that standard and "that is why Charleston County did not say Lot C-1 was not to be used for building purposes."

Quinn asserted,

> These notations on the Plat were not requested to be placed on the Plat, and were not placed on the Plat, by or at the request of the heirs of James Roper. These notations on the Plat were not, and are not, restrictions from use placed on Lots C-2, C-3, C-4 and C-5 by the heirs of James Roper. The heirs of James Roper indicated to me they wanted the ability to build residential homes on all five lots.

Quinn explained, "These notations were simply placed on the Plat by Charleston County to warn buyers of issues related to sewer disposal services."

In submitting the Plat for approval, the Heirs included a letter explaining they were "aware that this land possesses very poor soil conditions for septic systems and would like to request that the subdivision be approved with the stipulation that any lot which will not support a septic system be restricted from becoming a building lot until such time that public sewer service can be provided to that lot." They felt an urgency to have the land divided as they were getting older and they did not want their own descendants to have to deal with the problems of heirs' property.

Appellant argues it was entitled to rely on the Agricultural Use Provision when it purchased its lot. *See Ward*, 378 S.C. at 236, 662 S.E.2d at 457 ("Subsequent purchasers are entitled to rely on recorded deeds and plats to determine their rights in respect to property."). Appellant's representative, Edward Lee Terry, claimed he relied on the notation on the plat and his title insurance company, which told him the lots were restricted.

We find *Ward*, upon which Appellant relies, distinguishable. In *Ward*, the subdivision plat included a fifty-foot right-of-way to the lots from the highway. *Id.* at 229, 662 S.E.2d at 453. Although the grantor, Ward, admitted in her pleadings she provided the right-of-way pursuant to county regulations, on appeal she claimed the surveyor included the road on the plat under the erroneous belief that the regulations required the easement for the creation of a subdivision. *Id.* at 229, 662 S.E.2d at 453-54. She also asserted she was unaware the plat included a fifty-foot roadway and only intended for the existing driveway to remain as a shared private drive. *Id.* at 229, 662 S.E.2d at 454.

The court held,

> [W]hen Ward subdivided the property and recorded a plat referencing a fifty foot right-of-way, it may be inferred that she intended the right-of-way to be a private easement dedicated to the use of the lot owners, their successors in title, and the public. The deed and the recorded plat in this case are controlling notwithstanding an "intent" analysis. By recording the easement on the plat, Ward evidenced an intention to grant that easement to any future lot owners in the subdivision. When Ward originally conveyed Lot 4 with reference to the recorded plat, her grantees and any subsequent purchasers acquired the right to use this easement to the full extent that it is indicated in the plat. [The respondent] relied upon the recorded plat when it purchased Lot 4. The dedication of the private easement was complete when Ward originally conveyed the lot. It would now be unfair to deny [the respondent] the right to the full use and enjoyment of the easement as indicated in the plat, regardless of what Ward now argues were her intentions at the time the plat was recorded.

*Id.* at 236, 662 S.E.2d at 457.

Here, the alleged restriction differs from the easement in *Ward*. First, Ward admitted in her pleadings that she provided the fifty-foot right-of-way pursuant to county regulations. The Respondents did not make such an admission here. In fact, the record undisputedly shows the Heirs wanted the lots to become building lots once public sewer service could be provided to those lots. Second, Ward's

surveyor placed the easement on the plat. Here, according to the Quinn, he did not place the Agricultural Use Provision on the Plat. Rather, Charleston County placed it there. Finally, in *Gooldy*, the supreme court clearly stated that while a plat may create an implied easement, the presumption of an implied easement may be rebutted by a specific, contrary intention of the grantor. *See* 422 S.C. at 338, 811 S.E.2d at 782 (stating when a deed references a plat containing an easement, "a presumption of an implied easement arises *unless rebutted by a specific, contrary intention by the grantor*" (emphasis added)). Here, Respondents' evidence of the Heirs' contrary intent is undisputed.

Although Appellant is correct that the deeds for all of the lots specifically state they are subject to all restrictions, reservations, easements and other limitations that appear of record, including on the Plat, this language does not create a restriction the Heirs did not intend to create.

> The fact that a conveyance is made "subject to" restrictions set forth in some other deed or instrument referred to will not, without more, make the restrictions applicable to the property conveyed, if in fact the restrictions do not otherwise apply thereto. If the "subject to" language of the instrument in question refers to restrictions which in fact do not exist at all at the time of the conveyance, it does not operate to impose the supposed restrictions on the granted land; nor does a conveyance made expressly subject to restrictions existing on the conveyed land "if any such there be" thereby impose restrictions where none existed theretofore. A conveyance of land with warranties which are expressly made "subject to" the restrictions set forth in a certain instrument referred to does not subject the conveyed lands to the restrictions so designated when by their terms the restrictions do not apply to such land. While conveyances "subject to" restrictions give notice that such restrictions are of record, they are not an acknowledgment of the validity of such restrictions.

20 Am. Jur. 2d *Covenants, Conditions, and Restrictions.* § 151 (2015) (footnotes omitted).

Similarly, Appellant's own title insurance document did not create a guarantee that the Agricultural Use Provision was a restriction that ran with the land. The title insurance company was noting the provision was on the Plat and was taking an exception that it would not be liable under the policy if Appellant could not build on its lot.

Furthermore, Respondents Roberts and Cook constructed a house on Lot C-3, which was completed on February 5, 2009. Terry acknowledged he was familiar with the lots and the house was present before Appellant purchased Lot C-5. *See Spence v. Spence*, 368 S.C. 106, 120, 628 S.E.2d 869, 876 (2006) ("The party will be charged by operation of law with all knowledge that an investigation by a reasonably cautious and prudent purchaser would have revealed."). Therefore, we find Appellant's claimed reliance on the Plat could not defeat the Heirs' true intentions when evidence that the lots could be used for residential purposes was right before Terry's eyes.

We hold the record does not contain a scintilla of evidence to support the imposition of a building restriction on the Respondents' lots. *See Turner v. Milliman*, 392 S.C. 116, 121-22, 708 S.E.2d 766, 769 (2011) ("When reviewing a grant of summary judgment, appellate courts apply the same standard applied by the trial court pursuant to Rule 56(c), [of the South Carolina Rules of Civil Procedure (SCRCP)]."); Rule 56(c), SCRCP (providing that summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); *Hancock v. Mid-South Mgmt. Co., Inc.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009) ("[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment."); *Peterson v. W. Am. Ins. Co.*, 336 S.C. 89, 94, 518 S.E.2d 608, 610 (Ct. App. 1999) ("Under Rule 56(c), SCRCP, the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact."); *Id.* ("Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. Rather, the non-moving party must come forward with specific facts showing there is a genuine issue for trial."). Appellant presented no evidence supporting the existence of a genuine issue of material fact as to whether the Charleston County Planning Commission placed the Agricultural Use Provision on the Plat to denote its inability to grant a building permit at that time. However, Respondents

presented undisputed evidence that the Heirs, who were the grantors in this case, never intended to create a restrictive covenant requiring the lots to be used for agricultural use only. As the grantors, their intent is paramount as only the grantors can create a restriction that runs with the land. Accordingly, we hold the trial court did not err in granting summary judgment to Respondents.[1]

**AFFIRMED.**[2]

---

[1] In a footnote in the Statement of the Case section of its brief, Appellant asserts the trial court should not have granted summary judgment because there were material questions that must be tried before a factfinder. It asserts it had not taken the depositions of Quinn, the Respondents, and the Heirs "to understand more fully their intent." We find this argument is not properly before this court for several reasons. First, this argument is not listed in the statement of the issues on appeal. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal."). Second, the trial court did not address this argument and Appellant did not file a motion to alter or amend requesting a ruling. *See Noisette v. Ismail*, 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (finding where a trial court does not explicitly rule on an argument raised and appellant does not make a Rule 59, SCRCP, motion to obtain a ruling, the appellate court may not address the issue). Third, Appellant offers no authority to support this argument; therefore, the argument is conclusory and abandoned. *See Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001) ("South Carolina law clearly states that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review."). Fourth, in its memorandum opposing summary judgment and at the hearing, Appellant only asserted that it had not deposed Respondents. It did not argue it needed the opportunity to depose Quinn or the Heirs. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). Finally, Appellant does not assert what information it believes Respondents' depositions would reveal that would defeat Respondents' motion for summary judgment. *See Dawkins v. Fields*, 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003) (stating "the nonmoving party must demonstrate the likelihood that further discovery will uncover additional relevant evidence and that the party is 'not merely engaged in a fishing expedition'" (quoting *Baughman v. Am. Tel. and Tel. Co.*, 306 S.C. 101, 112, 410 S.E.2d 537, 544 (1991))).

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.

**HUFF, THOMAS, and MCDONALD, JJ., concur.**